1   Jeffrey F. Keller, Esq. (Bar No. 148005)
    jfkeller@kellergrover.com
2   Eric A. Grover, Esq. (Bar No. 136080)
    eagrover@kellergrover.com
3   Kathleen R. Scanlan, Esq. (Bar No. 197529)
    kscanlan@kellergrover.com
4   **KELLER GROVER LLP**
5   1965 Market Street
    San Francisco, CA 94103
6   Telephone:   (415) 543-1305
    Facsimile:   (415) 543-7861
7

8   *Counsel for Plaintiff*
    *RICHARD S.E. JOHNS*
9

10

11

12              **IN THE UNITED STATES DISTRICT COURT**

13          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**   JSC

14  RICHARD S.E. JOHNS, Individually and on      CASE NO.
15  Behalf of All Others Similarly Situated,       C 12 - 6152

16                              Plaintiff,        **CLASS ACTION COMPLAINT**

17          vs.

18  HITACHI, LTD.; HITACHI MAXELL, LTD.;         JURY TRIAL DEMANDED
    LG CHEM, LTD.; LG CHEM AMERICA,
19  INC.; MAXELL CORPORATION OF
    AMERICA; PANASONIC CORPORATION;
20  PANASONIC CORPORATION OF NORTH
    AMERICA; SAMSUNG SDI AMERICA,
21  INC.; SAMSUNG SDI CO., LTD.; SANYO
    ELECTRIC CO., LTD.; SANYO NORTH
22  AMERICA CORPORATION; SONY
    CORPORATION; SONY ELECTRONICS,
23  INC.; SONY ENERGY DEVICES
    CORPORATION,
24

25                              Defendants.

26

27

28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

**TABLE OF CONTENTS**

Page

I.     SUMMARY OF ACTION ..................................................................................... 1

II.    JURISDICTIONAND VENUE ............................................................................ 5

III.   THE PARTIES ....................................................................................................... 7

       A.    Plaintiff ........................................................................................................ 7

       B.    Defendants ................................................................................................... 7

             1.    Hitachi Defendants .......................................................................... 7

             2.    LG Chem Defendants ...................................................................... 8

             3.    Panasonic Defendants ..................................................................... 8

             4.    Samsung SDI Defendants .............................................................. 10

             5.    Sony Defendants ............................................................................ 10

IV.    STATEMENT OF FACTS .................................................................................. 11

       A.    Battery Technologies ............................................................................... 11

       B.    Li-Ion Rechargeable Batteries ................................................................. 13

             1.    Manufacture and Operation of Li-Ion Rechargeable
                   Batteries ......................................................................................... 13

             2.    Li-Ion Rechargeable Batteries Are Not Interchangeable with
                   Other Rechargeable Batteries ........................................................ 15

             3.    Where Li-Ion Rechargeable Battery Are Used .............................. 17

       C.    Existence of a Conspiracy in the Li-Ion Rechargeable Battery
             Market ....................................................................................................... 18

             1.    A Conspiracy May Be Inferred from Pricing Behavior for
                   Li-Ion Rechargeable Batteries During the Class Period ............... 18

             2.    Prices for Li-Ion Rechargeable Batteries During the Class
                   Period Defied Industry Expectations ............................................. 20

             3.    Defendants' Pricing and Production Levels in Response to
                   the Global Economic Crisis in 2008 Further Supports the
                   Existence of the Conspiracy .......................................................... 25

       D.    The Structure And Characteristics Of The Li-Ion Rechargeable
             Battery Market Render The Conspiracy More Plausible ......................... 25

             1.    The Highly Concentrated Li-Ion Rechargeable Batteries
                   Market ............................................................................................ 26

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

**TABLE OF CONTENTS**
**(continued)**

Page

          2.     The Li-Ion Rechargeable Batteries Market Has Barriers to Entry ............................................................................................... 27

          3.     The Demand for Li-Ion Rechargeable Batteries is Inelastic ......... 28

          4.     Trade Associations and Other Common Forums Exist................ 29

    E.     Government Investigations ......................................................................... 30

    F.     Defendants Have A History Of Colluding To Fix Prices For Critical Components Of Consumer Electronics ........................................................ 31

V.     MANNER AND MEANS OF THE CONSPIRACY .............................................. 33

VI.    THE INFLATED PRICES OF LITHIUM ION RECHARGEABLE BATTERIES WERE PASSED THROUGH TO CONSUMERS.......................... 34

VII.   TRADE AND COMMERCE.................................................................................. 35

VIII.  CLASS ACTION ALLEGATIONS ...................................................................... 36

IX.    ANTITRUST INJURY ......................................................................................... 45

X.     FRAUDULENT CONCEALMENT AND TOLLING .......................................... 45

XI.    CAUSES OF ACTION ........................................................................................ 46

PRAYER FOR RELIEF................................................................................................ 51

DEMAND FOR JURY TRIAL.................................................................................... 52

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1    Plaintiff Richard S.E. Johns, individually and on behalf of those similarly situated,

2    complains against Hitachi, Ltd.; Hitachi Maxell, Ltd.; LG Chem, Ltd.; LG Chem America, Inc.;

3    Maxell Corporation of America; Panasonic Corporation; Panasonic Corporation of North

4    America; Samsung SDI Co., Ltd.; Samsung SDI America, Inc.; Sanyo Electric Co., Ltd.; Sony

5    Corporation; Sony Electronics, Inc.; and Sony Energy Devices Corporation (collectively

6    "Defendants"), and alleges as follows on information and belief:

7    **I.    SUMMARY OF ACTION**

8    1.    This proposed class-action challenges a conspiracy among Defendants to fix

9    unlawfully and raise artificially the prices of Lithium Ion Rechargeable Batteries ("Li-Ion

10   Rechargeable Batteries"). "Li-Ion Rechargeable Batteries," as used in this complaint, are

11   batteries that are rechargeable and use lithium ion technology. Defendants are the world's largest

12   manufacturers of Li-Ion Rechargeable Batteries, which became the common power source for

13   portable electronic products, including cameras, notebook computers, mobile telephones,

14   smartphones, personal digital assistants, tablet computers, and handheld game consoles

15   (collectively, "Li-Ion Rechargeable Battery Products") after they were invented in 1991.

16   2.    Defendants, their parents, subsidiaries, or affiliates have orchestrated numerous

17   other global price-fixing conspiracies going back at least 20 years in other components of these

18   same portable electronic products. Defendants and their affiliated companies have consistently

19   targeted the component parts of consumer electronic devices, such as computers, televisions, and

20   cellular phones which have become commonplace in virtually every American household. Past

21   price-fixing conspiracies include:

| Price-Fixed Product | Conspiracy Period | Defendants or Entities Related to Defendants Involved in Conspiracy or Alleged Conspiracy |
|---|---|---|
| Cathode Ray Tubes ("CRTs") | 1997-2006 | **Hitachi-related Entities:** Hitachi, Hitachi America, Hitachi Displays, Hitachi Electronic Devices, Hitachi Asia, Shenzhen SEG Hitachi Color Display Devices<br><br>**LG-related Entities:** LG Electronics, LG Electronics USA, LG Electronics Taiwan Taipei, LG Philips Display USA, LP Displays International<br><br>**Panasonic-related Entities:** Panasonic, Panasonic North America, Matsushita Electronic (Malaysia), MT Picture Display, Beijing-Matsushita Color CRT, Panasonic |

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

| Price-Fixed Product | Conspiracy Period | Defendants or Entities Related to Defendants Involved in Conspiracy or Alleged Conspiracy |
|---|---|---|
| | | Consumer Electronics<br>**Samsung-related Entities**: Samsung, Samsung SDI, Samsung SDI America, Samsung Electronics, Samsung Electronics America, Samsung SDI Mexico, Samsung SDI Brazil, Shenzhen Samsung SDI, Tianjin Samsung SDI, Samsung SDI (Malaysia) |
| Dynamic Random Access Memory ("DRAM") | 1999-2002 | **Samsung-related Entities**: Samsung, Samsung Electronics, Samsung Semiconductor, Samsung Semiconductor America |
| Thin-Film Transistor Liquid Crystal Displays ("TFT-LCDs") | 1998-2006 | **LG-related Entities**: LG; LG Electronics; LG Display Co. Ltd.; and LG Display America, Inc.<br><br>**Hitachi-related Entities**: Hitachi, Ltd., Hitachi Displays, Ltd., and Hitachi Electronic Devices (USA), Inc.<br><br>**Samsung-related Entities**: Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; Samsung Semiconductor, Inc.<br><br>**Sanyo-related Entities**: Sanyo Consumer Electronics Co., Ltd. |
| Optical Disc Drives ("ODDs") | 2004-2009 | **Sony-related Entities**: Sony, Sony Optiarc America, Sony Optiarc, Sony Electronics, Sony NEC Optiarc, Sony Computer Entertainment America<br><br>**Hitachi-related Entities**: Hitachi, LG Electronics, Hitachi-LG Data Storage; Hitachi-LG Data Storage, Korea<br><br>**Samsung-related Entities**: Samsung, Samsung Electronics, Toshiba Samsung Storage Technology, Toshiba Samsung Storage Technology Korea, Samsung Electronics America<br><br>**LG-related Entities**: LG Electronics USA,<br><br>**Panasonic-related Entities**: Panasonic, Panasonic, Panasonic of North America |
| Static Random Access Memory ("SRAM") | 1996-2006 | **Hitachi-related Entities**: Hitachi, Hitachi America,<br><br>**Samsung-related Entities**: Samsung, Samsung Electronics, Samsung Electronics America, Samsung Semiconductor<br><br>**Sony-related Entities**: Sony, Sony Electronics |

3.     Defendants, their parents, subsidiaries, or affiliates and many of their executives have pleaded guilty to price-fixing with respect to many of the products listed above.

4.     These price-fixing conspiracies have tended to follow the same pattern. Korean conglomerates Samsung and LG launch a competitive attack in an industry that has been

1    traditionally controlled by a few large Japanese producers. Because Samsung and LG and other
2    firms located in Korea and Taiwan have substantially lower labor costs than their Japanese
3    competitors when they enter the market they put downward pressure on others in the market.
4    When the price is driven down, it lowers the profits for all producers. In response, the Japanese
5    and Korean producers organize group or bilateral meetings and communications to stabilize
6    prices. In doing so, they rely on their institutional knowledge of cartel organization across
7    industries. For instance, the participants in the TFT-LCDs conspiracy – which included Samsung
8    and LG entities – expressly modeled the conspiracy on a successful 10-year conspiracy to fix the
9    price of ABS plastic. In the case of ABS plastics, Samsung and LG coordinated with their
10   principal Taiwanese rival, Chi Mei, while at the same time "informally interacting" with Japanese
11   makers. The participants expressly applied this same model to the TFT-LCDs cartel; Taiwanese
12   and Korean firms (namely Samsung and LG) held multilateral price-fixing meetings while the
13   Korean firms coordinated with the Japanese makers informally through their representatives in
14   Tokyo.

15          5.      The companies organizing these cartels have also shown great sensitivity toward
16   the overwhelming feature of high-tech industries: the continual downward pressure on price
17   caused by the migration of production to lower-cost labor markets, the expansion of production
18   capacity, and the lowering of per-unit manufacturing costs, and other reasons. As Steve Jobs
19   once candidly told iPhone customers who bought right before a price cut, "If you always wait for
20   the next price cut or to buy the new improved model, you'll never buy any technology product
21   because there is always something better and less expensive on the horizon."
22   http://www.apple.com/hotnews/openiphoneletter/. Absent collusion, continually decreasing
23   prices is simply a fact of "life in the technology lane." *Id.* A high-tech cartel does not necessarily
24   need to increase prices to be successful; if it can simply stabilize prices and mitigate price
25   declines it can preserve billions in profits for its members, especially in periods of oversupply.

26          6.      The conspiracies in the component parts of these consumer electronic products,
27   like the conspiracy to fix Li-Ion Rechargeable Battery prices, also have other similar features,
28   including: (a) a highly concentrated market controlled by Asian corporations, (b) pricing pressure

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

- 3 -                    CLASS ACTION COMPLAINT

1    exerted on the conspirators by original equipment manufacturers seeking to price their products in

2    a competitive consumer electronics market, (c) rapid commoditization of new technology, and (d)

3    pricing behavior inconsistent with a competitive market.

4        7.    As with these other price-fixing conspiracies in the components of consumer

5    electronic products, Defendants and other co-conspirators agreed, combined, and conspired to

6    inflate, fix, raise, maintain, or stabilize artificially the price of Li-Ion Rechargeable Batteries. In

7    turn, this artificially raised prices of Li-Ion Rechargeable Battery Products, such as those Plaintiff

8    and Class Members purchased. Defendants' conspiracy was an illegal and unreasonable restraint

9    of interstate and foreign commerce in violation of Section One of the Sherman Act, 15 U.S.C.

10   § 1, and the laws of numerous states.

11       8.    Plaintiff and the Class Members are consumers who indirectly purchased, not for

12   resale, (1) a stand-alone Li-Ion Rechargeable Battery containing a cell manufactured by a

13   Defendant or (2) a Li-Ion Rechargeable Battery Product containing a Li-Ion Rechargeable Battery

14   containing a cell manufactured by a Defendant, during the period from and including January 1,

15   2002 through 2011 (the "Class Period").

16       9.    Defendants manufacture, market, and sell Li-Ion Rechargeable Batteries

17   throughout the United States and the world. Defendants collectively controlled approximately

18   two-thirds or more of the worldwide market for Li-Ion Rechargeable Batteries throughout this

19   period, and over 80 percent of the market in the early part of this period. The manufacture and

20   sale of Li-Ion Rechargeable Batteries is a multi-billion dollar industry. In 2011 alone, sales

21   revenues in the worldwide Li-Ion Rechargeable Battery market were approximately $14 billion.

22   In 2012, this figure is expected to reach approximately $17 billion.

23       10.   As described further below, since at least the first half of 2011, the United States

24   and the European Union have been investigating a conspiracy in the Li-Ion Rechargeable Battery

25   market. The Antitrust Division of the United States Department of Justice ("DOJ") is conducting

26   a criminal investigation into anticompetitive conduct in this market.

27   / / /

28   / / /

CLASS ACTION COMPLAINT

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

11.     As a direct result of Defendants' alleged anticompetitive and unlawful conduct,
Plaintiff and Class Members paid artificially inflated prices for Li-Ion Rechargeable Batteries
during the Class Period and have thereby suffered antitrust injury to their business or property.

**II.     JURISDICTIONAND VENUE**

12.     The Court has jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332(d)
and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, which vest
original jurisdiction in the district courts of the United States for any multi-state class action
where the aggregate amount in controversy exceeds $5 million and where the citizenship of any
member of the class of plaintiffs is different from that of any defendant. CAFA's amount in
controversy and diversity requirements are satisfied in this case.

13.     Venue is appropriate in the Northern District of California under 28 U.S.C.
§§ 1391(b) and (c) because, during the Class Period, many of the Defendants transacted business,
were found, or had agents in this District and because a substantial portion of the affected
interstate trade and commerce described below has been carried out in this District. For instance,
Apple Inc., the manufacturer of at least one product Plaintiff purchased, is based in Cupertino,
California, which is within this District. Apple Inc.'s products contain Li-Ion Rechargeable
Batteries, which are sold to consumers who reside within this District, including Plaintiff.

14.     The Court has personal jurisdiction over each Defendant because, among other
things, each Defendant:

        a.      transacted business throughout the United States, including in this District;

        b.      participated in the sale and distribution of Li-Ion Rechargeable Batteries
throughout the United States, including in this District;

        c.      had substantial contacts with the United States, including in this District;
and/or

        d.      was engaged in an illegal conspiracy that was directed at and had the
intended effect of causing injury to persons residing in, located in, or doing business throughout
the United States, including in this District.

/ / /

15. Defendants engaged in conduct both inside and outside the U.S. that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

16. Defendants' and their co-conspirators' activities were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

17. The Li-Ion Rechargeable Batteries Defendants manufactured abroad and sold for use are goods brought into the United States for sale and therefore constitute import commerce, whether the Li-Ion Rechargeable Battery Products containing their products are manufactured in the United States or abroad. To the extent any Li-Ion Rechargeable Batteries are purchased in the United States, and such Li-Ion Rechargeable Batteries do not constitute import commerce, Defendants' unlawful activities with respect thereto, as more fully alleged herein during the Class Period, had and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effects on United States commerce described herein, proximately caused antitrust injury to Plaintiff and Class Members in the United States.

18. By reason of the unlawful activities alleged herein, Defendants substantially affected commerce throughout the United States, causing injury to Plaintiff and Class Members. Defendants, directly and through their agents, engaged in a conspiracy affecting all states to fix or inflate prices of Li-Ion Rechargeable Batteries that unreasonably restrained trade and adversely affected the market for Li-Ion Rechargeable Batteries.

19. Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased Li-Ion Rechargeable Batteries or Li-Ion Rechargeable Battery Products for personal use and not for resale, including Plaintiff and Class Members.

20. Intradistrict Assignment: Assignment to the San Francisco or Oakland Division of the Court is proper pursuant to Northern District of California Local Rule 3-2(d) because a

///

- 6 - CLASS ACTION COMPLAINT

1   substantial part of the events giving rise to the claims arose in the counties enumerated therein.

2   For instance, Plaintiff is a resident of San Francisco County.

3   **III.    THE PARTIES**

4         **A.    Plaintiff**

5         21.    Plaintiff Richard S.E. Johns is a resident of San Francisco, California. During the

6   Class Period, Plaintiff purchased two MacBook Pro computers; an iPhone 3 and an iPhone 4, all

7   of which contain a Li-Ion Rechargeable Battery containing a cell manufactured by a Defendant.

8   As a result of the antitrust violations alleged in this complaint, Plaintiff has suffered injury.

9         **B.    Defendants**

10             **1.    Hitachi Defendants**

11        22.    Defendant Hitachi, Ltd. is a Japanese company with its principal executive office

12  at 6-6, Marunouchi 1-chome, Chiyoda-ku, Tokyo 100-8280, Japan. Defendant Hitachi, Ltd.

13  manufactures and sells Li-Ion Rechargeable Batteries through its Components and Devices

14  Business Unit. Defendant Hitachi, Ltd., either directly or through a wholly-owned subsidiary,

15  participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold

16  Li-Ion Rechargeable Batteries that were distributed throughout the United States, including in this

17  District, during the Class Period.

18        23.    Defendant Hitachi Maxell, Ltd. ("Hitachi-Maxell") is a Japanese corporation with

19  its principal executive office at 2-18-2 Iidabashi, Chiyoda-ku, Tokyo 102-8521, Japan.

20  Defendant Hitachi-Maxell is a wholly-owned subsidiary of Defendant Hitachi, Ltd. Defendant

21  Hitachi-Maxell was founded in 1960 and manufactures and sells batteries through its batteries

22  business unit. Defendant Hitachi-Maxell, either directly or through a wholly-owned subsidiary,

23  participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold

24  Li-Ion Rechargeable Batteries that were distributed throughout the United States, including in this

25  District, during the Class Period.

26        24.    Defendant Maxell Corporation of America ("Maxell") is a New Jersey corporation

27  with its principal executive offices at 3 Garret Mountain Plaza, 3rd Floor, Suite 300, Woodland

28  Park, New Jersey 07424. Defendant Maxell, either directly or through a wholly-owned

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

- 7 -                    CLASS ACTION COMPLAINT

1  subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed

2  and/or sold Li-Ion Rechargeable Batteries that were distributed throughout the United States,

3  including in this district, during the Class Period.

4      25.    Defendants Hitachi, Ltd., Hitachi-Maxell, Ltd., and Maxell Corporation of

5  America are referred to herein as "Hitachi."

6          ## 2.    LG Chem Defendants

7      26.    Defendant LG Chem, Ltd. ("LG Chem") is a Korean corporation with its principal

8  executive offices at 20 Yeouido-dong, Yeongdeungpo-gu, Seoul, South Korea. Defendant LG

9  Chem is an affiliate of Seoul-based conglomerate LG Electronics. Defendant LG Chem is one of

10 the world's leading manufacturers of Li-Ion Rechargeable Batteries. Defendant LG Chem, either

11 directly or through a wholly-owned subsidiary, participated in the conspiracy alleged in this

12 complaint and manufactured, marketed and/or sold Li-Ion Rechargeable Batteries that were

13 purchased throughout the United States, including in this District, during the Class Period.

14     27.    Defendant LG Chem America, Inc. ("LG Chem America") is a New Jersey

15 corporation with its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New

16 Jersey 07632. Defendant LG Chem America is a wholly owned subsidiary of Defendant LG

17 Chem. Defendant LG Chem America, either directly or through a wholly owned subsidiary,

18 participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold

19 Li-Ion Rechargeable Batteries that were purchased throughout the United States, including in this

20 District, during the Class Period.

21     28.    Defendants LG Chem and LG Chem America are referred to collectively herein as

22 "LG Chem."

23         ## 3.    Panasonic Defendants

24     29.    Defendant Panasonic Corporation is a Japanese corporation with its principal

25 executive offices at 1006 Oaza Kadoma, Osaka 571-8501, Japan. Up until approximately

26 October 1, 2008, Panasonic Corporation was formerly known as Matsushita Electric Industrial

27 Co., Ltd. Defendant Panasonic Corporation manufactures and sells Li-Ion Rechargeable Batteries

28 under the Panasonic name and also under the name of Defendant and wholly-owned subsidiary

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

CLASS ACTION COMPLAINT

Sanyo Electric Co., Ltd. With respect to those batteries sold under the Panasonic name, they are produced under Panasonic's internal division called "Energy Company." Defendant Panasonic Corporation is one of the world's leading manufacturers of Li-Ion Rechargeable Batteries. Defendant Panasonic Corporation, either directly or through a wholly-owned subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold Li-Ion Rechargeable Batteries that were distributed throughout the United States, including in this District, during the Class Period.

30.     Defendant Panasonic Corporation of North America, formerly known as Matsushita Electric Corporation of America, is a Delaware corporation with its principal executive offices at 1 Panasonic Way, Secaucus, New Jersey 07094. Panasonic Corporation of North America is a wholly-owned and controlled subsidiary of Defendant Panasonic Corporation. Defendant Panasonic Corporation of North America, either directly or through a wholly-owned subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold Li-Ion Rechargeable Batteries that were distributed throughout the United States, including in this District, during the Class Period.

31.     Defendant Sanyo Electric Co., Ltd. ("Sanyo") is a Japanese corporation with its principal executive offices at 5-5 Keihan-Hondori, 2-chome, Moriguchi, Osaka 570-8677, Japan. Defendant Sanyo is one of the largest manufacturers and suppliers of Li-Ion Rechargeable Batteries in the world. As of December 9, 2009, Defendant Sanyo became a wholly-owned subsidiary of Defendant Panasonic Corporation. Defendant Sanyo, either directly or through a wholly-owned subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold Li-Ion Rechargeable Batteries that were distributed throughout the United States, including in this District, during the Class Period.

32.     Defendant Sanyo North America Corporation is a Delaware corporation with its principal executive offices at 2055 Sanyo Avenue, San Diego, California 92154. Defendant Sanyo North America Corporation is a wholly-owned subsidiary of Defendant Sanyo Electric Co., Ltd. Defendant Sanyo North America Corporation, either directly or through a wholly-owned subsidiary, participated in the conspiracy alleged in this complaint and

- 9 -                                    CLASS ACTION COMPLAINT

1    manufactured, marketed and/or sold Li-Ion Rechargeable Batteries that were distributed

2    throughout the United States, including in this District, during the Class Period.

3        33.    Defendants Panasonic Corporation; Panasonic Corporation of North America;

4    Sanyo Electric, Co., Ltd.; and Sanyo North America Corporation are referred to collectively

5    herein as "Panasonic."

6            **4.    Samsung SDI Defendants**

7        34.    Defendant Samsung SDI Co., Ltd. ("Samsung SDI") is a Korean corporation with

8    its principal executive offices at 575 Shin-Dong, Youngtong-Gu, Suwon, Gyeonggi, South Korea.

9    Korean conglomerate Samsung Electronics, Inc. owns 20% of Defendant Samsung SDI Co., Ltd.

10   Defendant Samsung SDI is the world's largest manufacturer of Li-Ion Rechargeable Batteries.

11   Defendant Samsung SDI, either directly or through a wholly-owned subsidiary, participated in the

12   conspiracy alleged in this complaint and manufactured, marketed and/or sold Li-Ion

13   Rechargeable Batteries that were distributed throughout the United States, including in this

14   district, during the Class Period.

15       35.    Defendant Samsung SDI America, Inc. ("Samsung SDI America") is a California

16   corporation with its principal executive offices at 85 W. Tasman Drive, San Jose, CA 95134-

17   1703. Samsung SDI America is a wholly-owned subsidiary of Defendant Samsung SDI.

18   Defendant Samsung SDI America, either directly or through a wholly-owned subsidiary,

19   participated in the conspiracy alleged in this complaint and manufactured, marketed and/or sold

20   Li-Ion Rechargeable Batteries that were distributed throughout the United States, including in this

21   District, during the Class Period.

22       36.    Defendants Samsung SDI and Samsung SDI America are referred to herein as the

23   "Samsung SDI."

24           **5.    Sony Defendants**

25       37.    Defendant Sony Corporation is a Japanese corporation with its principal executive

26   offices at 1-7-1 Konan, Minato-Ku, Tokyo 108-0075, Japan. Defendant Sony Corporation

27   invented the Li-Ion Rechargeable Battery in 1991 and, since then, has been one of the world's

28   leading suppliers of Li-Ion Rechargeable Batteries. Defendant Sony Corporation, either directly

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1    or through a wholly-owned subsidiary, participated in the conspiracy alleged in this complaint

2    and manufactured, marketed and/or sold Li-Ion Rechargeable Batteries that were distributed

3    throughout the United States, including in this District, during the Class Period.

4         38.    Sony Energy Devices Corporation is a Japanese corporation with its principal

5    executive offices at 1-1 Shimosugishita, Takakura, Hiwada-machi, Koriyama-shi, Fukushima

6    963-0531, Japan.  Defendant Sony Energy Devices Corporation is a wholly-owned subsidiary of

7    defendant Sony Corporation.  Sony Corporation manufactures its Li-Ion Rechargeable Batteries

8    though its Sony Energy Devices Corporation subsidiary.  Sony Energy Devices Corporation

9    manufactures its Li-Ion Rechargeable Batteries at plants located in Japan, Singapore, and China.

10   Defendant Sony Energy Devices Corporation, either directly or through a wholly-owned

11   subsidiary, participated in the conspiracy alleged in this complaint and manufactured, marketed

12   and/or sold Li-Ion Rechargeable Batteries that were distributed throughout the United States,

13   including in this District, during the Class Period.

14        39.    Defendant Sony Electronics, Inc. is a Delaware corporation with its principal

15   executive offices at 16530 Via Esprillo, San Diego, CA 92127.  Defendant Sony Electronics, Inc.

16   is a wholly-owned subsidiary of Defendant Sony Corporation.  Defendant Sony Electronics, Inc.,

17   either directly or through a wholly-owned subsidiary, participated in the conspiracy alleged in this

18   complaint and manufactured, marketed and/or sold Li-Ion Rechargeable Batteries that were

19   distributed throughout the United States, including in this District, during the Class Period.

20        40.    Defendants Sony Corporation, Sony Energy Devices Corporation, and Sony

21   Electronics, Inc. are referred to herein as "Sony."

## IV.    STATEMENT OF FACTS

### A.    Battery Technologies

24        41.    Batteries power many different machines and devices.  There are three different

25   categories of batteries:  (1) chemical, (2) physical, and (3) biological.  Li-Ion Rechargeable

26   Batteries are chemical batteries.  Such batteries generate electricity through a chemical reaction

27   inside the battery.

28   / / /

- 11 -                          CLASS ACTION COMPLAINT

42. Chemical batteries are generally classified as either "primary" or "secondary." Primary batteries cannot be recharged after discharge, while secondary batteries are rechargeable. Rechargeable batteries comprise roughly 80% of all chemical batteries produced worldwide.

43. Lead acid-based technologies historically dominated the market for rechargeable batteries. Car batteries are the most common use of lead-based rechargeable batteries. Innovations in portable technology, such as laptop computers and cell phones, however, have commanded improvements in rechargeable battery technology to increase energy-to-weight and energy-to-volume ratios over those provided by lead-based technologies. Secondary battery manufacturers have therefore looked to other technologies, such as lithium ion, nickel-metal hydride ("NiMH"), and nickel cadmium ("NiCd"), to satisfy these demands. Of portable rechargeable battery technologies, Li-Ion Rechargeable Batteries occupy the largest share of the market at 75%. In 2008 alone, shipments of batteries using this technology grew by 20%. Plaintiff's action concerns Defendants' alleged illegal conduct with respect to Li-Ion Rechargeable Batteries.

44. Li-Ion Rechargeable Batteries and NiMH rechargeable batteries were introduced in or around 1991. Since then, Li-Ion Rechargeable Batteries rose to be the most popular type of secondary battery, outpacing both NiMH and NiCd rechargeable batteries. The following graph shows the growth rates of Li-Ion Rechargeable Batteries versus NiMH and NiCd batteries:

**FIGURE 1**



Major Rechargeable Battery Production

Source: Institute of Information Technology, Ltd.

CLASS ACTION COMPLAINT

**B.  Li-Ion Rechargeable Batteries**

**1.  Manufacture and Operation of Li-Ion Rechargeable Batteries**

45.     A Li-Ion Rechargeable Battery generally contains three primary components: (1) a cathode, (2) an anode, and (3) an electrolyte solution. The anode is typically made from carbon, often graphite. The cathode is typically made of lithium cobalt oxide, lithium iron phosphate, or lithium manganese oxide. The electrolyte is typically a mixture of lithium salts, such as lithium hexafluorophosphate, lithium hexafluoroarsenate monohydrate, lithium percolate lithium tetrafluoroborate, and lithium triflate.

46.     Inside, the battery has a separator between the cathode and anode and is filled with the electrolyte solution. The separator creates a barrier between the cathode and the anode, which, as its name implies, separates the two and also allows lithium ions to flow between them. The separator also protects the electrolyte solution and preserves the battery's conductivity. During recharging, lithium ions are released from the cathode into the electrolyte solution where they accumulate between the anode layers. During discharge, the ions return to the cathode. The lithium ions' movement between the cathode and the anode during the discharge process generates the electric current that provides power to the device. The following diagram shows the different parts of a Li-Ion Rechargeable Battery, as well as the discharge and recharge processes:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

CHARGER

LOAD



CHARGING

DISCHARGING

47.    Manufacturing Li-Ion Rechargeable Batteries generally requires two steps. The first step entails building the "cell" of the battery, which includes the cathode, anode, and electrolyte solution. Second, the cell or multiple cells are then assembled inside an enclosure. In some cases, certain protection circuitry is also added inside the enclosure. The assembled product is referred to as the "battery" or "module," which is placed inside a device to supply power to the device. Defendants manufacture both raw Li-Ion Rechargeable Battery cells, as well as assembled modules. Shown below are Li-Ion Rechargeable Battery cells placed inside an enclosure with added protection circuitry.



KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

- 14 -                CLASS ACTION COMPLAINT

48.     Defendants also sell raw cells to other entities commonly referred to in the industry as "assemblers." Assemblers incorporate Defendants raw Li-Ion Rechargeable Battery cells (and if necessary, circuitry) into a module and then sell the module under their own brand name. Whether manufactured by a Defendant or an assembler, the raw cells in a finished battery or module make up the overwhelming cost of a finished Li-Ion Rechargeable Battery module.

49.     Li-Ion Rechargeable Batteries include cylindrical, prismatic, pouch and polymer Li-Ion Rechargeable Batteries. Each Defendant manufactures and markets each of these types of Li-Ion Rechargeable Batteries. Lithium ion cylindrical or prismatic batteries are used primarily in notebooks, camcorders, mobile phones, and other electronic devices. Lithium ion polymer batteries have more freedom in battery shape, which enables the battery to be easily customized to fit the device. The exterior of the lithium ion polymer battery is generally made of a laminate film that allows it to be more flexible in terms of its shape.

50.     One of the primary differences between lithium ion and lithium ion polymer batteries is that, in the later, the lithium salt electrolyte is not held in an organic solvent, but rather in a solid polymer composite such as polyethylene oxide or polyacrylonitrile. The dry polymer design offers advantages over the traditional lithium ion battery in terms of fabrication and ruggedness because the electrolyte is a solid polymer as opposed to a gel or liquid electrolyte.

### 2.     Li-Ion Rechargeable Batteries Are Not Interchangeable with Other Rechargeable Batteries

51.     Li-Ion Rechargeable Batteries possess certain unique qualities that make them the most popular form of rechargeable battery. Because of many of these characteristics, Li-Ion Rechargeable Batteries are not interchangeable with other types of secondary or rechargeable batteries such as NiMH or NiCd batteries. As one website observes, "NiCad, NiMH and Li-Ion are all fundamentally different from one another and cannot be substituted unless the device has been pre-configured from the factory to accept more than one type of battery chemistry." (http://www.atbatt.com/faq/1.asp)

52.     First, unlike other forms of rechargeable batteries, Li-Ion Rechargeable Batteries do not suffer from any "memory effect." By contrast, if a NiCd battery is charged repeatedly to

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1    70% capacity, the discharge voltage will begin to fall sharply from the 70% even after a full

2    charge. Eventually, the battery will be incapable of holding a charge. The battery essentially

3    remembers 70% as the full capacity. Li-Ion Rechargeable Batteries, on the other hand, do not

4    suffer from the memory effect, and there is no risk to reducing the capacity of the battery when

5    only partially charging the battery. As Hewlett-Packard's website summarizes, "Li-Ion batteries

6    can be charged before they are fully discharged because they are not susceptible to the memory

7    effect." According to Apple "…you can recharge a lithium-ion polymer battery whenever

8    convenient, without requiring a full charge or discharge cycle."

9        53.    Second, Li-Ion Rechargeable Batteries are more powerful than all other types of

10   rechargeable batteries. For example, the nominal voltage of a NiMH rechargeable battery is

11   1.2 volts. The nominal voltage of a Li-Ion Rechargeable Battery, on the other hand, is 3.7 volts,

12   nearly three times more powerful.

13       54.    Third, Li-Ion Rechargeable Batteries also possess a higher "energy density" than

14   other types of rechargeable batteries. "Capacity" refers to the volume of electricity that a battery

15   can hold. The energy volume in a battery is the voltage times the capacity. Li-Ion Rechargeable

16   Batteries possess high energy density, both per weight and per volume, as compared to other

17   types of rechargeable batteries. As one website explained, "Li-Ion batter[ies] produce the same

18   energy as NiMH batter[ies] but weigh[] approximately 20%-35% less." Because the battery

19   makes up a significant part of the total weight of cellular phones, notebook computers, and other

20   portable devices, a lighter and smaller Li-Ion Rechargeable Battery that can generate the same

21   amount of electricity as a heavier and larger battery of a different type can help achieve a key

22   design goal of reducing the total weight of the device.

23       55.    Fourth, Li-Ion Rechargeable Batteries have a low self-discharge rate relative to

24   other types of rechargeable batteries. This means that Li-Ion Rechargeable Batteries hold their

25   charge longer over periods of non-use. For example, while NiMH batteries may lose nearly 30%

26   of their charge per month when not used, Li-Ion Rechargeable Batteries typically only lose 2-3%

27   per month.

28   ///

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

### 3. Where Li-Ion Rechargeable Battery Are Used

56. Because of their superior performance characteristics and their small size, Li-Ion Rechargeable Batteries have become the standard battery used in consumer electronic products. It is estimated that about 40-50% of all Li-Ion Rechargeable Batteries today are used in small consumer electronic products such as cell phones and notebook computers. Other Li-Ion Rechargeable Batteries are used in digital cameras, power tools, and other devices. The following figure below shows the various devices in which Li-Ion Rechargeable Batteries are used:

**FIGURE 2: Shipments of Li-Ion Rechargeable Batteries by End Use**



Source: Institute of Information Technology, Ltd.

57. Li-Ion Rechargeable Batteries are highly standardized products and interchangeable. The International Electrotechnical Commission ("IEC") and the Institute of Electrical and Electronics Engineers ("IEEE") develop standards that Li-Ion Rechargeable Batteries manufacturers follow so that products using Li-Ion Rechargeable Batteries can be developed to accommodate a specific Li-Ion Rechargeable Battery. For example, a Li-Ion Rechargeable Battery "18650" refers to a cylindrical shaped battery measuring 18.6 millimeters in diameter by 65.2 millimeters in height with a nominal voltage of 3.6 volts and a capacity of 2250mAh.

///

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

C. **Existence of a Conspiracy in the Li-Ion Rechargeable Battery Market**

1. **A Conspiracy May Be Inferred from Pricing Behavior for Li-Ion Rechargeable Batteries During the Class Period**

58. Defendants' alleged illegal behavior artificially stabilized and raised the prices of Li-Ion Rechargeable Batteries during the Class Period. Li-Ion Rechargeable Battery prices were higher than they would have been absent the conspiracy.

59. In or around 1991, Defendant Sony invented and began commercially producing Li-Ion Rechargeable Batteries. Between 1991 and late 1999 the Japan-based Sony and Panasonic Defendants dominated, if not exclusively controlled, the Li-Ion Rechargeable Battery market. Japan held in excess of 90% of the rechargeable battery market during that period. During that time, the pricing of Li-Ion Rechargeable Batteries was characterized by remarkable stability.

60. In or around 1999, Defendants Sony and Panasonic faced their first competitive threat from outside Japan as lower-cost Korean manufacturers entered the market. Beginning in or around 1997, the Korean government promoted research and development for the benefit of battery manufacturers in an effort to promote the secondary battery industry as a next generation growth industry. As a result, around this same time, Korea established the second automated mass battery production system in the world. The Korean Battery R&D Association invested 54.87 billion won, or roughly $42 million, over 5 years from 1997 to 2002, working with 11 manufacturers and 10 universities and research centers on a "small-size secondary battery development project."

61. As a result of this effort, in 1999, Defendant LG Chem became the first Korean manufacturer of Li-Ion Rechargeable Batteries, followed closely by Defendant Samsung SDI. With the introduction of competition from the Korean Defendants - LG Chem and Samsung SDI - worldwide prices for Li-Ion Rechargeable Batteries fell precipitously. In fact, in just three years, Samsung SDI and LG Chem went from having 0% market share in 2000 to approximately 20% of the worldwide market in 2003. At the same time, during the two-year period from 2000-02, Li-Ion Rechargeable Battery prices fell by nearly 50%. Prices fell despite a strong increase in
///

CLASS ACTION COMPLAINT

demand for Li-Ion Rechargeable Batteries used in devices such as mobile telephones and notebook computers.

62. Defendants Sony, Panasonic, and Hitachi sought to stem the rapid decline in Li-Ion Rechargeable Battery prices and their rapid loss of market share due to the intense competition from Defendants LG Chem and Samsung SDI. In or around the end of 2001 or the beginning of 2002, Defendants entered into an illegal conspiracy to stabilize and raise prices for Li-Ion Rechargeable Batteries. This is best observed from the fact that Li-Ion Rechargeable Batteries prices immediately stabilized after nearly a two-year period of rapid price decreases. In fact, during the period January 2002-July 2008 the dramatic decline of Li-Ion Rechargeable Batteries prices that occurred during 2000-01 ceased. Li-Ion Rechargeable Batteries prices often rose or remained stable, contrary to the expected effects of increased competition, decreasing costs, and the expected downward trend in prices characteristic of all technology products. The figure below depicts the prices of Li-Ion Rechargeable Batteries during the Class Period:

**FIGURE 3: Korean Domestic Producer Price Index for Lithium Batteries**



Source: Bank of Korea.

- 19 -      CLASS ACTION COMPLAINT

63. As a result of the worldwide economic crisis beginning in or around 2007 and the corresponding decline in demand for Li-Ion Rechargeable Batteries and electronic devices, Li-Ion Rechargeable Battery prices again declined. Beginning in or around early-2008, Li-Ion Rechargeable Battery prices began a steady decline which ended in or around mid-2009 and resulted in a price decrease of approximately 20%.

64. Corresponding with the decline in prices during 2008, production was cut substantially to stem the decline. For example, monthly Japanese Li-Ion Rechargeable Battery production dropped from 101 million units in March 2008 to 45 million units in February 2009. This dramatic coordinated cut in production achieved its desired result: prices for Li-Ion Rechargeable Batteries stabilized by the end of 2009.

65. The Li-Ion Rechargeable Battery prices remained stable until the U.S. Department of Justice and the European Union notified Defendants that they were targets in an investigation into price-fixing Li-Ion Rechargeable Batteries. The DOJ and EU investigations began in mid-2011. Both Japanese and Korean producer price indexes for Li-Ion Rechargeable Batteries fell after Defendants disclosed these investigations. In fact, within 3 months after disclosure of the investigations, prices declined approximately 10%.

### 2. Prices for Li-Ion Rechargeable Batteries During the Class Period Defied Industry Expectations

66. Many analysts predicted that, given the economics of the marketplace, Li-Ion Rechargeable Batteries prices would decline during the Class Period. However, prices did not decline throughout most of the Class Period. Instead, prices rose, defying industry expectations.

67. During the Class Period, Li-Ion Rechargeable Batteries also underwent substantial and continuous technological change that rapidly improved the energy density of the batteries and also reduced costs. Energy density, measured in watt-hours per kilogram or watt-hours per liter, more than doubled for Li-Ion Rechargeable Batteries over the decade from 1991 to 2001. Such technological progress continued unabated to the current year. For instance, in February 2012, a California-based company announced that it was developing a Li-Ion Rechargeable Battery with an energy density of 400 wh/kg.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

CLASS ACTION COMPLAINT

68.    Scientists, engineers, and industry analysts expected prices for Li-Ion

Rechargeable Batteries to continue their steep descent during the period following 2002.

Numerous technical studies undertaken in the early to mid-2000s predicted that scale economies

and learning curves would act to sharply lower cost as production volumes expanded.  Figure

Four, taken from a May 2007 study by Matthew A. Kromer and John B. Heywood, exemplifies

such predictions.

**FIGURE 4:**

**NiMH vs Li-Ion HEV Cell Cost/Volume Curve (50k-3M HEV/year)**



Source: Kromer and Heywood, *Electric Powertrains: Opportunities and Challenges in the U.S. Light-Duty Vehicle Fleet* at 36 (May 2007).

69.    The Kromer/Heywood study also notes the rapid pace of continuing technological

improvement: "while the NiMH battery is nearing fundamental practical limits . . . lithium ion

batteries are still improving.  With continued improvements in charge storage capability,

lithium-ion's advantage will become more pronounced with the passage of time. . . .  Though this

trend has slowed somewhat in recent years with the maturation of cobalt- and nickel metal-oxide

based lithium-ion batteries, other materials have the potential to allow for continued growth. . . ."

70.    The Kromer/Heywood study also observes that, "[i]n addition to this fundamental

advantage with respect to specific energy and power, lithium-ion batteries also offer the potential

for lower cost as the technology matures and production volumes increase.  Although more

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

expensive than NiMH batteries today, lithium-ion batteries scale more readily to high volume production hence have greater potential for cost reduction. . . . Perhaps more importantly, while the most expensive constituent materials of NiMh battery are intrinsically tied to the commodity price of nickel (relatively expensive), lithium ion batteries may be made from a number of different fungible materials. . . . Over the longer-term, there is strong potential to transition to even lower cost materials."

71.    The predicted expansion in the production volume of Li-Ion Rechargeable Batteries materialized.  According to the Japanese Ministry of Economy, Trade and Industry, Japanese annual Lithium-Ion Rechargeable Battery Production in Japan almost tripled from approximately 453 million units in 2001 to almost 1.1 billion units in 2011.  Demonstrating technological advances, the power capacity of these batteries more than quadrupled over the same period, from just over 484 million total Ah (amp-hours) in 2001, to over 2 billion total Ah in 2011.

72.    Thus, as Figure Five shows below, analysts confidently predicted continuing price declines in Li-Ion Batteries at the beginning of this decade.  Basic economic theory teaches that, in a competitive market, an increase in production should be associated with price declines.  After sharp price declines prior to 2002 and flat prices in 2003, industry analysts continued to predict continued annual 7 percent declines in Li-Ion Rechargeable Battery prices after 2003.  However, these predicted continuing price declines did not materialize because of the formation of the price-fixing cartel alleged in this complaint.  Instead, contrary to the expected effects of increased competition, Li-Ion Rechargeable Batteries prices exhibited unusual stability and, on occasion even increased.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1

2

3

4

5

6

7

8

9

10

11

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIGURE 5**



Source: Pillot, *The Worldwide Rechargeable Battery Market 2003-2008*, available at http://www.rechargebatteries.org/MarketDataRechargeableBatteries.pdf.

73.    These trends in pricing are also evident in Korea, the second most important

location for Li-Ion Rechargeable Batteries production after Japan, as evidenced by the official

government producer price index for Li-Ion Rechargeable Batteries constructed by the Bank of

Korea.  A price index, unlike an average unit value for batteries, controls for changes in mix of

size and qualities of batteries being produced.

///

///

///

///

///

///

///

///

///

///

- 23 -                    CLASS ACTION COMPLAINT

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861



**FIGURE 6**
**Lithium-ion Battery Price Index and Lithium-ion Battery Production**

Source: Bank of Korea; Japanese Ministry of Economy, Trade and Industry

74. Figure Six shows that, after the sharp decline in prices beginning in early 2000 triggered by the Korean manufacturers' entry into the market, the cartel members managed to stop continuing declines. Defying industry expectations, battery prices stabilized and, at times increased, over a five-year period, from early 2002 through early 2008. This effort was highly successful in not only reducing the rate of decline, but at times elevating Li-Ion Rechargeable Battery prices until the Great Recession struck in 2008. At that point, as markets for the mobile consumer electronics and information technology products relying on Li-Ion Rechargeable Batteries crashed, prices started to tumble sharply once again, at an even steeper rate than had been triggered by Korean entry back in early 2000.

///

-24-          CLASS ACTION COMPLAINT

### 3.   Defendants' Pricing and Production Levels in Response to the Global Economic Crisis in 2008 Further Supports the Existence of the Conspiracy

75.   As the global recession reduced demand for the devices that use Li-Ion Rechargeable Batteries, prices for these batteries dropped.  In fact, prices for Li-Ion Rechargeable Batteries fell roughly 34% from August 2008 through January 2009.  Faced with rapidly decreasing prices during this time, cartel members sharply cut back production of Li-Ion Rechargeable Batteries.  Japanese cartel members dramatically cut production from 102 million units a month in November 2008, to 46 million units per month in January 2009, engineering a reduction in output of 55%.  Then, just six months later, Japanese production shot back up near pre-recession levels to approximately 98 million units per month.

76.   This reduction in output successfully prevented any further decline in prices, while the continuing restraint on production growth after 2008 successfully stabilized prices at a roughly constant level and stemmed further price declines.

77.   Economic principles teach that, when producers are competing, they expand output to the point where price covers the incremental or marginal cost of the last unit produced. Defendants' reduction in production by 55% - only to increase output six months later to nearly the same production levels (while holding prices the same) - is not plausibly the result of competitive forces.

78.   Further, the steep price swings of Li-Ion Batteries are not likely explained by changes in costs for raw material inputs, capital, labor, and energy.  There were no drastic six-month swings in these costs.

### D.   The Structure And Characteristics Of The Li-Ion Rechargeable Battery Market Render The Conspiracy More Plausible

79.   In addition to Li-Ion Rechargeable Battery pricing and production levels, the structure and other characteristics of the Li-Ion Rechargeable Battery market support the existence of a conspiracy, are conducive to a price-fixing agreement, and have made collusion particularly attractive.  Specifically, the Li-Ion Rechargeable Batteries market: (1) is highly

///

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1  concentrated; (2) has high barriers to entry, (3) has inelasticity of demand, and (4) has trade
2  associations present.

3          **1.**    **The Highly Concentrated Li-Ion Rechargeable Batteries Market**

4        80.    When a market is highly concentrated, it facilitates collusion. If an industry is
5  divided into a large number of small firms, the present-day gain from cheating on a cartel (profits
6  from sales captured from other cartel members through undercutting of the cartel-fixed price in
7  the current time period, which risks causing the cartel to fall apart in the future) is large relative to
8  the firm's possible gains from the cartel's continuing future success (the firm's future share of the
9  total cartel profits if collusion were to continue successfully). Conversely, with a more
10  concentrated industry, a greater share for a colluding firm in future cartel profits tips the balance
11  in favor of continued collusion, and away from any short-term, transitory bump in profits that
12  could be achieved by undercutting the cartel price and gaining a transitory increase in market
13  share.

14        81.    Based on 2008 data, the Li-Ion Rechargeable Battery market is moderately
15  concentrated. The overall Herfindahl–Hirschman Index ("HHI") for this market is 1,219. If the
16  respective market shares of Defendant Panasonic and Defendant Sanyo (of which Defendant
17  Panasonic owned a majority) are combined, the HHI increases to 1,475. Under Department of
18  Justice guidelines at that time, these figures demonstrate that the market is "moderately
19  concentrated."

20
21  **Table - 2008 HHI for Rechargeable Battery Manufacturers**

   **Actual Shares**                                 **Panasonic and Sanyo Combined**

22

| Manufacturer | Share | HHI |
|---|---|---|
| Sanyo | 22.4% | 504 |
| Samsung SDI | 15.2% | 230 |
| Sony | 14.8% | 220 |
| BYD | 8.6% | 73 |
| BAK | 6.9% | 48 |
| LG Chem | 6.8% | 47 |
| Panasonic | 5.7% | 33 |

| Manufacturer | Share | HHI |
|---|---|---|
| Panasonic/Sanyo | 28.1% | 792 |
| Samsung SDI | 15.2% | 230 |
| Sony | 14.8% | 220 |
| BYD | 8.6% | 73 |
| BAK | 6.9% | 48 |
| LG Chem | 6.8% | 47 |

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

      CLASS ACTION COMPLAINT

| Manufacturer | Share | HHI |
|---|---|---|
| Hitachi Maxell | 5.2% | 27 |
| ATL | 4.0% | 16 |
| Lishen | 3.6% | 13 |
| E-One | 1.6% | 3 |
| SGS | 1.5% | 2 |
| NEC | 1.1% | 1 |
| A123 | 0.3% | 0 |
| Pouch others | 1.5% | 2 |
| LIB others | 0.8% | 1 |
| | 100.0% | 1,219 |

| Manufacturer | Share | HHI |
|---|---|---|
| Hitachi Maxell | 5.2% | 27 |
| ATL | 4.0% | 16 |
| Lishen | 3.6% | 13 |
| E-One | 1.6% | 3 |
| SGS | 1.5% | 2 |
| NEC | 1.1% | 1 |
| A123 | 0.3% | 0 |
| Pouch others | 1.5% | 2 |
| LIB others | 0.8% | 1 |
| | 100.0% | 1,475 |

82.     Another measure of concentration, called the $CR_4$, or the four-firm concentration ratio, looks at the share of product sales accounted for by the four largest firms. This measure is used as a diagnostic in analyzing what levels of concentration facilitate multi-firm collusion.

83.     A seminal study of Department of Justice price-fixing investigations found that 76 percent of these cartels occurred in sectors with a $CR_4$ of 50 percent or greater, which was about double the average $CR_4$ for manufacturing. Fully a quarter of these cartels therefore were still organized in markets with less than 50-percent share held by the four largest firms. *See* G.A. Hay & D. Kelley, "An Empirical Survey of Price-Fixing Conspiracies," 17 J.L. & Econ. 13 (1974).

84.     The $CR_4$ exceeded 60% in the market for Lithium Ion Rechargeable Batteries for all of the proposed class period, topping 80% in some years. The market share of the alleged cartel members never fell below 70% and reached to almost 90% in some years.

85.     The concentration in the Li-Ion Rechargeable Battery market is comparable to the concentration in markets in which successful price-fixing cartels have operated, including the market for LCD panels of which many Defendants were also participants.

### 2.     The Li-Ion Rechargeable Batteries Market Has Barriers to Entry

86.     A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supra-

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1   competitive pricing. Where, however, there are significant barriers to entry, new entrants are less

2   likely. Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

3        87.     There are substantial barriers that preclude, reduce or make more difficult entry

4   into the Li-Ion Rechargeable Batteries market. A new entrant into the business will face costly

5   and lengthy start-up costs, including multi-million dollar costs associated with research and

6   development, manufacturing plants and equipment, energy, transportation distribution

7   infrastructure, skilled labor, and long-standing customer relationships.

8        88.     Fabrication facilities ("Fabs") required to produce Li-Ion Rechargeable Batteries

9   are expensive. The cost to develop a Li-Ion Rechargeable Battery fab that is capable of

10   producing 3 million cells per month costs approximately $3-4 per cell. Thus, a fab making

11   3 million cells per month would cost approximately $108-144 million. This estimate does not

12   include the cost of researching, developing, and engineering the technology and equipment

13   designs for the fab.

14        89.     For example, in 2009, Sanyo's cost to expand its fab was expected to be

15   $189 million. Similarly, Sony's expansion in 2009 was estimated at $371 million.[1]

16        90.     In addition to the large costs of building a plant, given the nature of the materials

17   used in Li-Ion Rechargeable Batteries, any new entrant will be required to comply with various

18   environmental regulations in whatever jurisdiction such plant is built. Compliance with such

19   regulations will require extensive testing and obtaining government approval, all of which will

20   take many years.

21                **3.    The Demand for Li-Ion Rechargeable Batteries is Inelastic**

22        91.     "Elasticity" is a term used to describe the sensitivity of supply and demand to

23   changes in one or the other.

24        92.     For a cartel to profit from raising prices above competitive levels, market demand

25   must be relatively less elastic at competitive prices. That is, an increase in prices should not

26

27   _____

28   [1] Source: Min, David and Byung-nam Kim, "Rechargeable battery industry," Eugene Investment and Securities, Feb. 23, 2009, p.24.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1  cause a huge decline in demand. Otherwise, increased prices would result in sharply declining

2  sales, as some customers purchase substitute products or decline to buy altogether. Less elastic

3  demand facilitates collusion, allowing producers to raise their prices without triggering customer

4  substitution and sufficient lost sales revenues as to offset the beneficial effect of higher prices on

5  profits for products they still continue to sell.

6      93.      Demand for Li-Ion Rechargeable Batteries is not very elastic because there are no

7  close substitutes for these products. As explained above, Li-Ion Rechargeable Batteries have

8  several advantages over lead acid-based batteries and other rechargeable technologies, like NiMH

9  and NiCd, in that they have no memory loss, can conform to various shapes and sizes, and have a

10  high energy-to-weight ratio. Further, waste products from Li-Ion Rechargeable Batteries are

11  largely innocuous, making such Batteries more popular their NiCd counterparts.

12          **4.    Trade Associations and Other Common Forums Exist.**

13      94.      Various trade organizations exist, providing Defendants opportunities to facilitate

14  collusive activity. These trade organizations include:

15      •      Institute of Information Technology ("IIT"): Based in Japan, the IIT

16             produces reports on the rechargeable battery industry. It was founded in

17             1999, and regularly published reports under its "LIB market research

18             program." (http://iit.co.jp/kaishaannnai-eng.htm) While not a trade

19             association itself, the IIT regularly participates in the conventions and

20             seminars attended by rechargeable battery manufacturers.

21      •      International Battery Seminar and Exhibit: The event provides information

22             on "...the state of the art of worldwide energy storage technology

23             developments for portable products, power and vehicular applications."

24             Attendees in 2011 included LG Chemical, Lishen, Maxell, Panasonic, Saft

25             America, Samsung SDI and Sanyo Energy.

26             (http://powersources.net/florida/frameset.html)

27      •      BATTERY JAPAN: Billed as the "world's largest trade show for

28             rechargeable batteries," BATTERY JAPAN is a concurrent exhibition and

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

- 29 -                CLASS ACTION COMPLAINT

1   technical conference.  Representatives of Sanyo, Sony and Panasonic all

2   participated as Committee Members for the 2011 conference.

3   • The Rechargeable Battery Association ("PRBA"): Originally established in

4   1991 to develop battery recycling programs, the PRBA now acts as the

5   "voice of the Rechargeable Power Industry" and hosts an annual meeting.

6   Officers of both Sanyo and Sony sit on the organization's board of

7   directors, which counts LG Chemical, Maxell, Panasonic Battery, and

8   Samsung SDI among its members.

9   (http://www.prba.org/prba/membership/membership_directory/Default.ashx)

10  **E.    Government Investigations**

11  95.    A globally coordinated antitrust investigation is taking place in at least the United

12  States and Europe aimed at suppliers of Li-Ion Rechargeable Batteries.

13  96.    In or around May 2011, Defendant Sony Corporation disclosed that its

14  wholly-owned U.S. subsidiary, Sony Electronics, Inc., received a subpoena from the DOJ

15  concerning its "secondary batteries" business.  Specifically, Sony disclosed that:

16  In May 2011, Sony Corporation's U.S. subsidiary, Sony
17  Electronics Inc., received a subpoena from the U.S. Department of
    Justice ("DOJ") Antitrust Division seeking information about its
18  secondary battery business.  Sony understands that the DOJ and
    agencies outside the United States are investigating competition in
19  the secondary batteries market.  Based on the stage of the
    proceedings it is not possible to estimate the amount of loss or
20  range of possible loss, if any, that might result from adverse
    judgments, settlements or other resolutions of this matter.

21  Sony Corporation Form 20-F for fiscal year ending March 31, 2012.

22  97.    Around the same time, according to a Korean news article, DOJ confirmed that

23  DOJ was conducting a criminal investigation into potential price fixing concerning the sale of

24  secondary batteries in the United States and had been since the first half of 2011.  The same

25  article quoted the source as stating that the investigation is in its final stages and that criminal

26  charges are likely to be filed.

27  98.    On or about August 20, 2012, LG Chem confirmed that it also was the target of the

28  DOJ investigation.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1     ·99.     Other news articles have confirmed that, in addition to Defendants Sony and LG

2    Chem, Samsung SDI is under investigation by the DOJ for price fixing with respect to the sale of

3    rechargeable batteries. For its part, Panasonic has declined to respond to questions regarding

4    whether it is under DOJ investigation.

5         100.    It is significant that Defendants' anticompetitive behavior is the subject of a DOJ

6    criminal grand jury investigation. According to the Antitrust Division's Manual, last revised in

7    2009, in order for DOJ to institute a grand jury investigation, "staff should prepare a

8    memorandum on behalf of the section or field office chief to the Director of Criminal

9    Enforcement detailing the information forming the basis of the request." Following a review of

10   that memorandum, the request for a grand jury must be approved by the Assistant Attorney

11   General for the Antitrust Division based on the standard that a criminal violation may have

12   occurred. In addition, the fact that the DOJ Antitrust Division investigation is criminal, as

13   opposed to civil, is significant as well. The Division's Manual includes "Standards for

14   Determining Whether to Proceed by Civil or Criminal Investigation," which state: "[i]n general,

15   current Division policy is to proceed by criminal investigation and prosecution in cases involving

16   horizontal, per se unlawful agreements such as price fixing, bid rigging and horizontal customer

17   and territorial allocations." Accordingly, the existence of a criminal investigation into the Li-Ion

18   Rechargeable Battery market supports the existence of the conspiracy alleged in this complaint.

19       **F.**    **Defendants Have A History Of Colluding To Fix Prices For Critical**
            **Components Of Consumer Electronics**
20

21        101.    Many Defendants have a long history of criminal collusion and are either currently

22    the subject of worldwide investigations into other technology-related products or have been

23    convicted of participating in price fixing cartels involving technology-related products. Further,

24    much of the illegal conduct to which Defendants or their affiliates have admitted, took place

25    during the Class Period identified in this complaint.

26        102.    A notebook computer contains four key pieces of hardware: a dynamic random

27    access memory ("DRAM") chip, a liquid crystal display ("LCD") screen, an optical disk drive

28    ("ODD"), and a rechargeable lithium-ion battery. Defendants have pled guilty to fixing the prices

1    of the first three of these components, and DOJ is investigating whether to bring criminal price-

2    fixing charges for the fourth component: Li-Ion Rechargeable Batteries. In or around October

3    2005, Samsung Electronics Company, Ltd. and Samsung Semiconductor, Inc. agreed to plead

4    guilty and pay a $300 million fine for participating in an international conspiracy to fix prices in

5    the DRAM market. Samsung Electronics Company, Ltd. and Samsung Semiconductor, Inc.

6    admitted that they participated in the conspiracy from approximately April 1, 1999 through

7    June 15, 2002.

8        103.   In addition, seven Samsung executives, Il Ung Kim, Sun Woo Lee, Yeongho

9    Kang, Young Woo Lee, Thomas Quinn, Young Hwan Park, Young Bae Rha agreed to plead

10    guilty to participating in the conspiracy with respect to DRAM. Each agreed to pay a $250,000

11    criminal fine and serve prison sentences in the United States ranging from seven to fourteen

12    months.

13        104.   Samsung is in the DOJ leniency program with respect to the DOJ's investigation

14    into the market for TFT-LCDs, meaning that it has admitted its participation in the cartel.

15        105.   In November 2008, LG Display Co., Ltd., a wholly-owned Korean subsidiary of

16    LG Electronics, agreed to plead guilty and pay a $400 million to the United States in connection

17    with its participation in a worldwide conspiracy to fix the prices of TFT-LCDs during the period

18    from September 2001 through June 2006. At the time, the fine LG paid was the second highest

19    ever imposed by the DOJ's Antitrust Division. In addition, in April 2009, LG Display executive

20    Bock Kwon agreed to plead guilty to participating in the global LCD conspiracy from September

21    2001 through June 2006. Kwon, a Korean national, agreed to serve 12 months in a US prison and

22    pay a $30,000 criminal fine. Further, in February 2009, another LG Display executive, Duk Mo

23    Koo, agreed to plead guilty to participating in the global LCD conspiracy from September 2001

24    through December 2006.

25        106.   In March 2009, Hitachi Displays, Ltd., a wholly owned Japanese subsidiary of

26    Hitachi, Ltd., agreed to plead guilty and pay a $31 million fine for participating in a worldwide

27    conspiracy to fix LCD prices during the period April 1, 2001 through March 31, 2004.

28    / / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

107.     In September 2011, an entity that is a joint venture between Hitachi, Ltd. and LG Electronics, Inc. - Hitachi-LG Data Storage, Inc. – agreed to plead guilty and pay a $21.1 million fine for participating in various conspiracies to rig bids and fix prices for ODDs during the period from June 2004 through September 2009. In December 2011, Hitachi-LG Data Storage executives Young Keun Park, Sang Hun Kim, and Sik Hur agreed to plead guilty for participating in the conspiracy with respect to ODDs during the period November 2005 through September 2009. All three agreed to serve prison time in the United States and pay criminal fines.

108.     Defendants have also entered guilty pleas for fixing prices for other high-tech products.

109.     In or around March 2011, Defendant Samsung SDI, Company, Ltd. agreed to plead guilty and pay a $32 million fine for participating in a "global conspiracy to fix prices, reduce output, and allocate market share of color display tubes, a type of cathode ray tube used in computer monitors and other specialized applications. . . . " Samsung SDI Company Ltd. admitted it participated in the conspiracy from approximately January 1997 through at least March 2006.

110.     In September 2010, Defendant Panasonic Corporation agreed to plead guilty and pay a $49.1 million fine for participating in a conspiracy to "suppress and eliminate competition by fixing prices to customers of household compressors. . . . " during the period October 14, 2004 through December 31, 2007.

## V.     MANNER AND MEANS OF THE CONSPIRACY

111.     For purposes of forming and carrying out the charged combination and conspiracy, Defendants did those things that they combined and conspired to do, including, among other things:

    a.     participating in meetings, conversations and communications in the United States, Japan, Korea, and elsewhere to discuss the prices of Li-Ion Rechargeable Batteries in the United States and elsewhere;

    b.     agreeing during those meetings, conversations, and communications, on prices for Li-Ion Rechargeable Batteries sold in the United States and elsewhere;

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1            c.     agreeing, during those meetings, conversations and communications, to

2 depress the supply of Li-Ion Rechargeable Batteries;

3            d.     agreeing, during those meetings, conversations and communications, to

4 coordinate prices for Li-Ion Rechargeable Batteries sold in the United States and elsewhere;

5            e.     selling Li-Ion Rechargeable Batteries in the United States and elsewhere at

6 collusive and noncompetitive prices;

7            f.     accepting payment for Li-Ion Rechargeable Batteries at collusive and

8 noncompetitive prices;

9            g.     engaging in meetings, conversations, and communications in the United

10 States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon

11 price-fixing scheme; and

12            h.     employing measures to keep their conduct secret.

## VI.    THE INFLATED PRICES OF LITHIUM ION RECHARGEABLE BATTERIES WERE PASSED THROUGH TO CONSUMERS

15      112.     Defendants' conspiracy to raise, fix, or maintain the price of Li-Ion Rechargeable

16 Batteries at artificial levels resulted in harm to Plaintiff and Class Members because it resulted in

17 them paying higher prices for Li-Ion Rechargeable Battery Products than they would have in the

18 absence of Defendants' conspiracy.

19      113.     Li-Ion Rechargeable Batteries are commodity like products with functionally

20 equivalent products available from Defendants. Defendants manufacture Li-Ion Rechargeable

21 Batteries pursuant to standard specifications.

22      114.     A Li-Ion Rechargeable Battery is purchased by a consumer as a stand-alone

23 product, or as a substantial part of a Li-Ion Rechargeable Battery Product. When a Li-Ion

24 Rechargeable Battery is purchased by consumers as a stand-alone product, the battery or the cell

25 inside the battery itself is directly traceable to the specific manufacturing defendant. When a

26 Li-Ion Rechargeable Battery is purchased as part of a Li-Ion Rechargeable Battery Product, it is a

27 distinct, physically discrete element of the end-use product and is identifiable by a specific,

28 discrete part or model number that permits tracing. Li-Ion Rechargeable Batteries are traceable

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

     CLASS ACTION COMPLAINT

1    and identifiable throughout the chain of distribution to the end user. They do not undergo any

2    physical alterations as they move through the chain of distribution.

3        115.    The purchaser buys a Li-Ion Rechargeable Battery either from the direct purchaser

4    OEM or through a reseller such as a retailer. Thus, a Li-Ion Rechargeable Battery follows a

5    traceable physical chain from Defendants to OEMs to the purchaser of the Li-Ion Rechargeable

6    Battery Product. Tracing can help show that changes in the prices paid by direct purchasers of

7    Li-Ion Rechargeable Batteries affect prices paid by indirect purchasers of the Li-Ion

8    Rechargeable Batteries themselves or Li-Ion Rechargeable Battery Products.

9        116.    The OEM and retail markets of Li-Ion Rechargeable Batteries and Li-Ion

10   Rechargeable Battery Products are subject to vigorous price competition. The direct purchaser

11   OEMs and retailers have very thin net margins. They are therefore at the mercy of their

12   component costs such that increases in the price of Li-Ion Rechargeable Batteries lead to quick,

13   corresponding price increases at the OEM and retail levels for Li-Ion Rechargeable Batteries and

14   Li-Ion Rechargeable Battery Products.

15       117.    As a result, the inflated prices of Li-Ion Rechargeable Batteries resulting from

16   Defendants' price fixing conspiracy have been passed on to Plaintiff and Class Members by direct

17   purchasers, manufacturers, distributors and retailers.

18       118.    Li-Ion Rechargeable Batteries make up a substantial component cost of Li-Ion

19   Rechargeable Battery Products. The retail price of a Li-Ion Rechargeable Battery Product is

20   determined in substantial part by the cost of the Li-Ion Rechargeable Battery it contains.

21       119.    Thus, Plaintiff and Class Members have been forced to pay supra-competitive

22   prices for Li-Ion Rechargeable Batteries and Li-Ion Rechargeable Battery Products. These

23   inflated prices have been passed on to them by direct purchaser manufacturers, distributors and

24   retailers.

25   **VII.    TRADE AND COMMERCE**

26       120.    During the period this complaint covers, Defendants sold to manufacturers located

27   in various states in the United States substantial quantities of Li-Ion Rechargeable Battery

28   Products shipped from outside the United States and from other states in a continuous and

- 35 -                    CLASS ACTION COMPLAINT

1  uninterrupted flow of interstate and foreign trade and commerce. In addition, substantial

2  quantities of equipment and supplies necessary to the production and distribution of Li-Ion

3  Rechargeable Battery Products, as well as payments for Li-Ion Rechargeable Battery Products

4  and related products sold by Defendants, traveled in interstate and foreign trade and commerce.

5  The business activities of Defendants in connection with the production and sale of Li-Ion

6  Rechargeable Battery Products that were the subject of the charged conspiracy were within the

7  flow of, and substantially affected, interstate and foreign trade and commerce.

8  **VIII.   CLASS ACTION ALLEGATIONS**

9      121.   Plaintiff brings this action on behalf of himself and as a class action under

10  Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive

11  relief on behalf of the following class (the "Nationwide Class"):

> All persons and entities that indirectly purchased for their own use
> and not for resale either a Lithium Ion Rechargeable Battery
> containing a cell manufactured by a Defendant and/or a Lithium
> Ion Rechargeable Battery Product containing a Lithium Ion
> Rechargeable Battery containing a cell manufactured by a
> Defendant during the period January 1, 2002 through 2011.

16     122.   Plaintiff also brings this action on behalf of themselves and as a class action under

17  Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the

18  state antitrust, unfair competition, and consumer protection laws on behalf of the following class

19  (the Indirect Purchaser Class"):

> All persons and entities that indirectly purchased for their own use
> and not for resale either a Lithium Ion Rechargeable Battery
> containing a cell manufactured by a Defendant and/or a Lithium
> Ion Rechargeable Battery Product containing a Lithium Ion
> Rechargeable Battery containing a cell manufactured by a
> Defendant during the period January 1, 2002 through 2011.

24     123.   The Nationwide Class and the Indirect Purchasers Class are referred to herein as

25  the "Classes." Excluded from the Classes are Defendants, their parent companies, subsidiaries

26  and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the

27  federal government, states and their subdivisions, agencies and instrumentalities, and persons

28  who purchased lithium ion rechargeable battery products directly or for resale.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

CLASS ACTION COMPLAINT

1    124.    While Plaintiff does not know the exact number of the members of the Classes,

2    Plaintiff believes there are hundreds of thousands of members in each Class.

3    125.    Common questions of law and fact exist as to all members of the Classes. This is

4    particularly true given the nature of Defendants' conspiracy, which was generally applicable to all

5    the members of both Classes, thereby making appropriate relief with respect to the Classes as a

6    whole. Such questions of law and fact common to the Classes include, but are not limited to:

7        a.    Whether Defendants engaged in a combination and conspiracy among

8    themselves to fix, raise, maintain or stabilize the prices of Li-Ion Rechargeable Batteries sold in

9    the United States;

10        b.    The identity of the participants of the alleged conspiracy;

11        c.    The duration of the alleged conspiracy and the acts carried out by

12    Defendants in furtherance of the conspiracy;

13        d.    Whether the alleged conspiracy violated the Sherman Act, as alleged in the

14    First Cause of Action;

15        e.    Whether the alleged conspiracy violated state antitrust and unfair

16    competition law, as alleged in the Second Cause of Action;

17        f.    Whether Defendants unjustly enriched themselves to the detriment of the

18    Plaintiff and the members of the Classes, thereby entitling Plaintiff and Class Members to

19    disgorgement of all benefits derived by Defendants, as alleged in the Third Cause of Action;

20        g.    Whether the conduct of Defendants, as alleged in this Complaint, caused

21    injury to the business or property of Plaintiff and Class Members;

22        h.    The effect of the alleged conspiracy on the prices of Li-Ion Rechargeable

23    Batteries and Li-Ion Rechargeable Battery Products sold in the United States during the Class

24    Period;

25        i.    The appropriate injunctive and related equitable relief for the Nationwide

26    Class; and

27        j.    The appropriate class-wide measure of damages for the Damages Class.

28    / / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1        126.    Plaintiff's claims are typical of the claims of the members of the Classes, and

2    Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff and all members

3    of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially

4    inflated prices for Li-Ion Rechargeable Batteries or Li-Ion Rechargeable Battery Products

5    purchased indirectly from Defendants.

6        127.    Plaintiff's claims arise out of the same common course of conduct giving rise to

7    the claims of the other Class Members. Plaintiff's interests are coincident with, and not

8    antagonistic to, those of the other members of the Classes. Plaintiff is represented by counsel who

9    are competent and experienced in the prosecution of antitrust and class action litigation.

10       128.    The questions of law and fact common to the Class Members predominate over

11   any questions affecting only individual members, including legal and factual issues relating to

12   liability and damages.

13       129.    Class action treatment is a superior method for the fair and efficient adjudication

14   of the controversy, in that, among other things, such treatment will permit a large number of

15   similarly situated persons to prosecute their common claims in a single forum simultaneously,

16   efficiently and without the unnecessary duplication of evidence, effort and expense that numerous

17   individual actions would engender. The benefits of proceeding through the class mechanism,

18   including providing injured persons or entities with a method for obtaining redress for claims that

19   it might not be practicable to pursue individually, substantially outweigh any difficulties that may

20   arise in management of this class action.

21       130.    The prosecution of separate actions by individual members of the Classes would

22   create a risk of inconsistent or varying adjudications, establishing incompatible standards of

23   conduct for Defendants.

24       131.    Plaintiff bring this Indirect Class Action on behalf of all persons similarly situated

25   pursuant to Rule 23 of the Federal Rules of Civil Procedure and/or respective state statute(s), on

26   behalf of all members of the following classes (collectively, the "State Classes"):

27   / / /

28   / / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

a.   **Arizona**:

All persons and entities residing in Arizona that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

b.   **California**:

All persons and entities residing in California that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

c.   **District of Columbia**:

All persons and entities residing in the District of Columbia that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

d.   **Florida**:

All persons and entities residing in Florida that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

e.   **Illinois**:

All persons and entities residing in Illinois that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

f.   **Iowa:**

All persons and entities residing in Iowa that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product

- 39 -          CLASS ACTION COMPLAINT

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

g.   **Kansas**:

All persons and entities residing in Kansas that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

h.   **Maine**:

All persons and entities residing in Maine that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

i.   **Massachusetts**:

All persons and entities residing in Massachusetts that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

j.   **Michigan**:

All persons and entities residing in Michigan that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

k.   **Minnesota**:

All persons and entities residing in Minnesota that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

///

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

l.   **Mississippi**:

All persons and entities residing in Mississippi that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

m.   **Nebraska**:

All persons and entities residing in Nebraska that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

n.   **Nevada**:

All persons and entities residing in Nevada that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

o.   **New Hampshire**:

All persons and entities residing in New Hampshire that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

p.   **New Mexico**:

All persons and entities residing in New Mexico that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

q.   **New York**:

All persons and entities residing in New York that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product

containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

r.   **North Carolina**:

All persons and entities residing in North Carolina that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

s.   **North Dakota**:

All persons and entities residing in North Dakota that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

t.   **Oregon:**

All persons and entities residing in Oregon that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

u.   **South Carolina:**

All persons and entities residing in South Carolina that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

v.   **South Dakota**:

All persons and entities residing in South Dakota that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

///

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

w.   **Tennessee**:

All persons and entities residing in Tennessee that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

x.   **Utah:**

All persons and entities residing in Utah that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

y.   **Vermont:**

All persons and entities residing in Vermont that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

z.   **West Virginia:**

All persons and entities residing in West Virginia that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

aa.   **Wisconsin**:

All persons and entities residing in Wisconsin that indirectly purchased for their own use and not for resale either a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant and/or a Lithium Ion Rechargeable Battery Product containing a Lithium Ion Rechargeable Battery containing a cell manufactured by a Defendant during the period January 1, 2002 through 2011.

Excluded from the State Classes are: (1) Defendants; (2) any entity in which Defendants have a controlling interest; (3) Defendants' officers, directors and employees; (4) Defendants' legal representatives, successors and assigns; and (5) the Court and other courts to which this case is

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1  assigned. The proposed State Classes are both ascertainable and share a well-defined community

2  of interest in common questions of law and fact. Furthermore, this action satisfies the numerosity,

3  commonality, typicality, adequacy, predominance and superiority requirements.

4       132.    Plaintiff does not know the exact number of Class members at the present time.

5  However, due to the nature of the trade and commerce involved, there are many millions of class

6  members, geographically dispersed throughout the nation such that joinder of all Class members

7  is impracticable.

8       133.    The common legal and factual questions, which do not vary from Class member to

9  Class member, and which may be determined without reference to individual circumstances of

10  any Class member include, but are not limited to, the following:

11            a.      Whether Defendants engaged in a combination and conspiracy among

12  themselves to fix, raise, maintain or stabilize the prices of Li-Ion Rechargeable Batteries sold in

13  the United States;

14            b.      The duration and extent of the alleged contract, combination or conspiracy;

15            c.      Whether Defendants were participants in the contract, combination or

16  conspiracy alleged herein;

17            d.      The effect of the contract, combination or conspiracy on the prices of Li-Ion

18  Rechargeable Batteries and Li-Ion Rechargeable Battery Products in the United States during the

19  Class Period;

20            e.      Whether the conduct of Defendants caused injury to Plaintiff and other

21  members of the State Classes;

22            f.      Whether the alleged contract, combination or conspiracy violated state

23  antitrust statutes; and

24            g.      Whether the alleged conduct violated the common law of unjust

25  enrichment.

26       134.    Questions of law and fact common to members of the State Classes predominate

27  over any questions which may affect only individual members.

28  / / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

135.    Plaintiff's claims are typical of the claims of the Classes, and Plaintiff will fairly and adequately protect the interests of the State Classes. Plaintiff's interests are not antagonistic to the claims of the other members of the Classes, and there are no material conflicts with any other member of the State Classes that would make class certification inappropriate. Plaintiff has retained competent counsel experienced in complex antitrust and consumer protection class action litigation and will prosecute this action vigorously.

136.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome on the courts if individual litigation of numerous cases would proceed. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented in this Complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.

137.    Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues.

138.    Whatever difficulties may exist in the management of the class action will be greatly outweighed by the benefits of the class action procedure, including, but not limited to, providing Class members with a method for the redress of claims that may not otherwise warrant individual litigation.

## IX.    ANTITRUST INJURY

139.    The effect of Defendants' conduct as described herein has been to inflate artificially the prices paid by Plaintiff and members of the Classes for Li-Ion Rechargeable Batteries and Li-Ion Rechargeable Battery Products.

## X.    FRAUDULENT CONCEALMENT AND TOLLING

140.    Throughout the Class Period, Defendants engaged in a successful, illegal price-fixing and supply control conspiracy that was self-concealing. Defendants effectively,

1   affirmatively and fraudulently concealed their unlawful combination, conspiracy and acts in

2   furtherance thereof from Plaintiff and the members of the Classes.

3       141.   Plaintiff did not know nor could have known that the prices for Li-Ion

4   Rechargeable Batteries and Li-Ion Rechargeable Battery Products were artificially inflated and

5   maintained by virtue of Defendants' illegal price-fixing conspiracy, and that Plaintiff and Class

6   Members were paying higher prices. Information concerning the various government

7   investigations in the Li-Ion Rechargeable Batteries industry did not emerge until the first half of

8   2011. It was not until this time that Plaintiff and members of the Classes had any facts or

9   information concerning the Defendants' illegal conduct.

10      142.   Plaintiff has exercised due diligence by promptly investigating the facts giving rise

11  to the claims asserted herein upon having reasonable suspicion of the existence of Defendants'

12  conspiracy.

13      143.   As a result of Defendants' fraudulent concealment of their conspiracy, the running

14  of any statute of limitations has been tolled with respect to any claims that Plaintiff and the Class

15  members have as a result of the anticompetitive conduct alleged in this complaint.

16  **XI.    CAUSES OF ACTION**

17                          **FIRST CAUSE OF ACTION**
                     **Violation of Section One of The Sherman Act**
18                  **(On behalf of Plaintiff and Nationwide Class)**

19      144.   Plaintiff incorporates and realleges, as though fully set forth herein, each of the

20  paragraphs set forth above.

21      145.   Defendants and unnamed coconspirators entered into and engaged in a contract,

22  combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the

23  Sherman Act (15 U.S.C. § 1).

24      146.   Beginning as early as 2002 and continuing through 2011, the exact date being

25  unknown to Plaintiff and exclusively within the knowledge of Defendants, Defendants and their

26  co-conspirators entered into a continuing contract, combination or conspiracy to unreasonably

27  restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) by

28  artificially reducing or eliminating competition in the United States.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

147.    In particular, Defendants have combined and conspired to raise, fix, maintain, or stabilize the prices of Li-Ion Rechargeable Batteries.

148.    As a result of Defendants' unlawful conduct, prices for Li-Ion Rechargeable Batteries were raised, fixed, maintained, and stabilized in the United States.

149.    The contract, combination, or conspiracy among Defendants consisted of a continuing agreement, understanding, and concerted action among Defendants and their co-conspirators.

150.    For purposes of formulating and effectuating their contract, combination, or conspiracy, Defendants and their co-conspirators did those things they contracted, combined, or conspired to do, including:

    a.    exchanged information on prices charged for Li-Ion Rechargeable Batteries; agreed to raise, fix, and maintain prices for Li-Ion Rechargeable Batteries;

    b.    raised, fixed, and maintained prices for Li-Ion Rechargeable Batteries;

    c.    allocated markets for Li-Ion Rechargeable Batteries; and

    d.    sold Li-Ion Rechargeable Batteries throughout the U.S. at non-competitive prices.

151.    As a result of Defendants' unlawful conduct, Plaintiff and the other Class Members have been injured in their businesses and property in that they have paid more for Li-Ion Rechargeable Batteries and Li-Ion Rechargeable Battery Products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

152.    The alleged contract, combination or conspiracy is a per se violation of the federal antitrust laws.

153.    These violations are continuing and will continue unless enjoined by this Court.

154.    Pursuant to section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiff and the Class seek the issuance of an injunction against Defendants, preventing and restraining the violations alleged herein.

/ / /

/ / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

## SECOND CAUSE OF ACTION
### (Violation of State Antitrust and Unfair Competition Laws)

155.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the 154 paragraphs set forth above.

156.    Defendants engaged in a continuing contract, combination, and conspiracy in restraint of interstate trade and commerce, which had the purpose and effect of fixing, raising, maintaining and/or stabilizing the price of Li-Ion Rechargeable Batteries at artificially high, non-competitive levels in the United States.

157.    The conspiracy had its intended effect, as Defendants benefitted from selling Li-Ion Rechargeable Batteries at supra-competitive prices.

158.    For the purposes of effectuating the aforesaid contract, combination and conspiracy, Defendants:

    a.    agreed among themselves to fix, raise, maintain and/or stabilize the prices of Li-Ion Rechargeable Batteries in the United States;

    b.    agreed among themselves to restrict the supply of Li-Ion Rechargeable Batteries by implementing bid-rigging and coordinating their actions; and

    c.    agreed among themselves to implement supra-competitive increases in the prices of Li-Ion Rechargeable Batteries in the United States.

159.    As a result of Defendants' unlawful conduct, Plaintiff and the other members of the State Classes have been injured in their business and property in that they have paid more for Li-Ion Rechargeable Batteries and Li-Ion Rechargeable Battery Products than they otherwise would have paid in the absence of Defendants' unlawful conduct.

160.    By reason of the foregoing, Defendants have violated Arizona Revised Statutes §§ 44-1401, *et seq.*

161.    By reason of the foregoing, Defendants have violated California Business and Professions Code §§ 16720, *et seq.*

162.    By reason of the foregoing, Defendants have violated District of Columbia Code Annotated §§ 28-4501, *et seq.*

163.   By reason of the foregoing, Defendants have violated the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

164.   By reason of the foregoing, Defendants have violated the Illinois Antitrust Act, Illinois Compiled Statutes, §§ 740 Ill. Comp. Stat. 10/1, *et seq.*

165.   By reason of the foregoing, Defendants have violated Iowa Code §§ 553.1, *et seq.*

166.   By reason of the foregoing, Defendants have violated Kansas Statutes Annotated §§ 50-101, *et seq.*

167.   By reason of the foregoing, Defendants have violated the Maine Revised Statutes 10 M.R.S. §§ 1101, *et seq.*

168.   By reason of the foregoing, Defendants have violated Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

169.   By reason of the foregoing, Defendants have violated Minnesota Statutes §§ 325D.49, *et seq.*

170.   By reason of the foregoing, Defendants have violated Mississippi Code Annotated §§ 75-21-1, *et seq.*

171.   By reason of the foregoing, Defendants have violated Nebraska Revised Statutes §§ 59-801, *et seq.*

172.   By reason of the foregoing, Defendants have violated Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

173.   By reason of the foregoing, Defendants have violated New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

174.   By reason of the foregoing, Defendants have violated New Hampshire Revised Statutes §§ 356:1, *et seq.*

175.   By reason of the foregoing, Defendants have violated New York General Business Laws §§ 340, *et seq.*

176.   By reason of the foregoing, Defendants have violated North Carolina General Statutes §§ 75-1, *et seq.*

/ / /

CLASS ACTION COMPLAINT

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1    177.    By reason of the foregoing, Defendants have violated North Dakota Century Code

2    §§ 51-08.1-01, *et seq.*

3    178.    By reason of the foregoing, Defendants have violated Oregon Revised Statutes

4    §§ 646.705, *et seq.*

5    179.    By reason of the foregoing, Defendants have violated South Carolina's Unfair

6    Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

7    180.    By reason of the foregoing, Defendants have violated South Dakota Codified Laws

8    §§ 37-1-3.1, *et seq.*

9    181.    By reason of the foregoing, Defendants have violated Tennessee Code Annotated

10   §§ 47-25-101, *et seq.*

11   182.    By reason of the foregoing, Defendants have violated Utah Code Annotated §§ 76-

12   10-911, *et seq.*

13   183.    By reason of the foregoing, Defendants have violated 9 Vermont Stat. Ann.

14   §§ 2451, *et seq.*

15   184.    By reason of the foregoing, Defendants have violated West Virginia Code §§ 47-

16   18-1, *et seq.*

17   185.    By reason of the foregoing, Defendants have violated Wisconsin Statutes

18   §§ 133.01, *et seq.*

19                      **THIRD CAUSE OF ACTION**
                              **Unjust Enrichment**
20

21   186.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the

22   paragraphs set forth above.

23   187.    To the detriment of Plaintiff and Class Members, Defendants have been and

24   continue to be unjustly enriched as a result of the unlawful and/or wrongful conduct alleged

25   herein. Defendants have unjustly benefited by receiving higher prices for Li-Ion Rechargeable

26   Batteries, which higher prices were passed along to consumers, and would otherwise not have

27   been possible absent the unlawful and/or wrongful conduct.

28   ///

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

188.   Between the parties, it would be unjust for Defendants to retain the benefits attained by their actions. Accordingly, Plaintiff and Class Members seek full restitution of Defendants' enrichment, benefits and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and Class members pray for relief as set forth below:

A.   Certification of the action as a class action pursuant to Federal Rule of Civil Procedure 23, and appointment of Plaintiff as Class Representative and their counsel of record as Class Counsel;

B.   A declaration that Defendants' conduct constituted an unlawful restraint of trade in violation of the state statutes alleged herein and that Defendants are liable for the conduct or damage inflicted by any other co-conspirator;

C.   Restitution and/or damages to Class members for their purchases of Li-Ion Rechargeable Batteries and Li-Ion Rechargeable Battery Products at inflated prices;

D.   Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

E.   Pre-judgment and post-judgment interest on such monetary relief;

F.   Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendants as a result of the anti-competitive conduct alleged herein;

G.   The costs of bringing this suit, including reasonable attorneys' fees; and

H.   All other relief to which Plaintiff and Class members may be entitled at law or in equity.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax. 415.543.7861

1

## DEMAND FOR JURY TRIAL

2      Plaintiff, on behalf of himself and all others similarly situated, hereby requests a jury trial

3   on any and all claims so triable.

4   Dated: December 4, 2012              **KELLER GROVER, LLP**

5

6                                        By: _____
7                                              JEFFREY F. KELLER

8                                        *Counsel for Plaintiff*
                                         *RICHARD S.E. JOHNS*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28